You may begin when you're ready. Good morning, Your Honors. Glenn McGrady for the Taxpayer McGinnis. If I have 10 minutes, I'll reserve two, if I may. I think this is the most important tax case to arise in the Federal court system since 1988, because there is no area of law in which bright lines are more important, because every taxpayer must every year come to a bottom line, exactly computed. And if it's wrong, the taxpayer is subject to an array of penalties and lawsuits which, in this case, for example, the costs of which can approach or exceed that of the tax at issue. It's important to all the companies that buy and resell these lottery rights, for this is the only income street right, income stream right, about which there's any doubt about the capital asset status. It's important to all the states who are not. Excuse me? I'm not ruling, I'm not asked to rule as to their treatment of it, is it? I mean, that's not the issue before us as to how they would treat their investment in this lottery, right? It goes to the... It is. Well, I understand that. They don't care one way or another, do they? Sure they do. If they buy it, it's not their problem. Well, it's, they care whether it's a capital asset because they also want to know whether they can get capital gain treatment or not when they resell it. Let me ask you a question. Under appellant's theory, if they were a willing buyer, could I assign my, and it didn't violate some other law, I don't think it would, could I assign my income as a federal judge during good behavior, you know, through my life tenure to somebody for a set sum, and then instead of having ordinary income treatment on my income every year, just pay a capital gain on that assignment? No. Judge Holmes decided that in 1930 in Lucas against Earle, that you cannot assign your tax bracket in the assignment. Why is it different from, if the lottery income would ordinarily be ordinary income, they're not wages, but if they would be treated as ordinary income when paid by the, by the state, why is it different? For two reasons. First of all, what Judge Holmes and the subsequent Supreme Court decided in the Blair and Schaffner cases is that in order to get, in order to be able to assign it and later get capital gain treatment, you have to assign your entire treat, which is your job. You would have had to assign your job to someone else, and your job then would belong to that other person who would then collect the income. Second of all, the cases in the lower courts routinely deny capital gain treatment to contracts or rights to personal service income. Those are the only cases of which we are aware in which rights to income streams are not held to be capital when they are sold in their entirety. There are a variety of reasons articulated in the lower court cases from 1960 through the 70s, including the Holt case in this court. The correct reason, in our view, as to why you cannot sell personal service rights and get capital gain is the Arkansas Vest 1224A4 exception, which says you cannot get capital gain treatment for an asset which you have acquired in the ordinary course of your business for your services rendered, and that would be your salary. Is there any case where any federal court has held that an assignment of lottery winning can be given capital gain treatment as appellant contends here? There have been, to my knowledge, exactly five cases on assigning lottery winnings. The first was the district court opinion in this case. Subsequent to that opinion, there have been four tax court cases. The Davis case was the first, then Boehm, then Simpson, and then Johns. The Davis case, the counsel in that case simply made the argument that Arkansas Vest 1224A4 was an assignment of lottery winnings. But what's the answer to Judge Gould's question? Are there any cases that have so held or not? There have been only five cases on the issue of assigning lottery rights, and they all have held. I just want an answer to the question. I don't mean to cross-examine you, but it's a yes or no. Are there any federal court decisions that have held that assignment of lottery proceeds can be treated as a capital gain as appellant contends? No. This is a case of first impression. Okay. The other court ---- It's not easy to answer a question. I'm sorry. I was trying to distinguish the cases before I got the answer requested. You don't get to distinguish them until you answer the question. The answer is no. This is a case of first impression because this is the first case in which the taxpayer assigned his entire stream. The Davis case, which was subsequent to this, the taxpayer had a right to 20 installments, collected four, sold a vertical slice of 11, and then kept the last three. The opinion in that case essentially just cited the district court opinion in this case, but the judge noticed that he only had sold a, quote, portion of his lottery stream. The next case was Boehm, a pro se case decided in the tax court, 25 lottery installments, the taxpayer collected five, sold 12, and kept the remainder in eight. In that case, the court ---- Did he collect anything in this case? Excuse me? Did the McGinnis collect any of his income? Yes. He collected about the first five installments, and then he sold all 15 of his remaining cases. He sold the whole thing. He sold his entire remaining asset. And to me, that is the key, crucial, and entire distinction under the Hort and Lake cases between the facts of this case and the facts of all the other four later tax court cases, in all four of which the taxpayers kept a remainder in a certain number of years. In Oregon, you weren't counsel for Mr. McGinnis. No, sir. But in Oregon, he got tax relief from the State by arguing just the opposite position, correct? I agree he got tax relief from the State, but the arguments had nothing to do with what his arguments are here. Really? Nothing to do? Nothing to do. Explain. If we're talking about the judicial estoppel issue, one of the requirements of that is that the legal issues must be the same. The legal issue in that case was whether he was taxable on the sale of his lottery winnings under the general Oregon taxing of all revenue statute, or whether the sales proceeds were subject to a clause in the lottery law that said lottery winnings are tax-free. And you won by arguing what? I wasn't there. I know you weren't there. It was won because of largely an argument about legislative intent and statutory interpretation. And how did you characterize the money that was involved? I said the money was characterized as being tax-free if it had continued to be received on a periodic installment basis. As ordinary income. It wasn't taxed at all. It was tax-free. The issue in that case, did it continue to be tax-free? The Oregon lottery statute said that if you just receive your installment payments, they are tax-free, because it was the obviously the legislative intent of Oregon that people who win the lottery shouldn't have to pay taxes on their lottery winnings. The issue in the case was when Mr. McGinnis sold it to a third party and received sale proceeds, were the sales proceeds the, quote, prize awarded under the tax exemption statute. And what the Court decided in the Oregon case was that under Oregon law, the prize was the right to receive payments. And it did not matter whether the right arrived in 20 installments or whether the right arrived and was commuted into one sales sum, the right was still tax-free. It was an interpretation of Oregon law. As a backup argument to Oregon law, McGinnis' lawyers in that proceeding cited the Palm Beach case, which has to do with selling tax-exempt Federal bonds. They cited a Federal revenue ruling which says the same thing, that if you sell tax-exempt bonds, meaning that if you receive the annual bond payments, they're tax-free, and when you sell it, it's tax-free. And as a backup and in reaction to the Department of Revenue's citation to the late case, McGinnis' lawyers distinguished the late case, which was a Federal case that has nothing to do with tax-free versus taxable. It's a case that has to do with taxable as capital gain or taxable not as capital gain. Well, the lawyers took the position that the receipt of the lump sum was in substance nothing more than a substitute for payments to be received over time and, therefore, were taxed as ordinary income. McGinnis' receipt of the lump sum was nothing more than a substitute for the payments to be received over time and should be taxed as ordinary income. You're reading from the — From his lawyer's brief. His lawyer's brief before that cites the Palm Beach case. I understand that, but I mean, the argument here is this is a substitute for ordinary income and ought to be treated as ordinary income. Isn't that inconsistent with the position you're taking here? It is not inconsistent under judicial estoppel law, because the legal — So it's inconsistent. You'll agree with me on that. No, I do not agree with you, sir, because the issue in this case is whether — It's ordinary income, a substitute for ordinary income. Yes, and sometimes the sale of a lottery stream can be ordinary income. Sometimes it can be capital gain, depending upon how much of the stream you sell, how long you have sold the stream. Let me ask a — I have a couple of questions for you. My time is up. I think the presiding judge will permit you to respond to my question, I assume. So here I really have two related questions. One, I don't understand what the theoretical basis is for a distinction between selling part of your lottery proceeds, assigning part of them, or assigning them all. I mean, if I'm holding stock, I have 100 shares of XYZ stock, and I sell 50 of them, or I sell 100 of them, it doesn't matter if I sell part of them or all of them as to whether it's a capital asset, does it? Yes, absolutely, it does, sir. It does matter? Yes. And here — there is — the policy — Does it matter in that stock case if I can buy it? Yes. If all you were to do was to sell your right to stock dividends after they were declared before you received them, but you held the stock, but every year or quarter you sold the right to the dividends — My question was if I sold the stock. Well, if you sell the entire stock, you get capital gain treatment. If you sell only the right to the dividends each quarter by quarter by quarter, that's a carve-out horizontal slice. I have 100 shares of stock. I don't have to sell all 100 shares to get — No, you can divide your shares in what's called a vertical slice. You can sell 50, and you get capital gain on the 50. Listen, I'm still not getting why it matters if he sells all of his lottery proceeds or part of them. This has to — Isn't it like one share of stock? No. One share of stock would be one-three. What we're talking about here is a case where the asset itself is a stream of payments. The nature of the asset is a financial asset. For example, a bond is the simplest example. If all you sell is the right to your next coupon payment on the bond, that's a horizontal slice. But you have to pay for a bond. I mean, it's a capital asset because you buy it. You invest in it. You pay something for it. Not necessarily. Does that matter here? No. You can be given a bond. You can be willed a bond. You can be — Somebody paid for it. Well, but that has nothing to do with it in the hands of any given tax paper. Many assets are given to people via testaments, via gift. Right. But somebody invested capital — I mean, I don't know if that matters here. I'm sure you've thought about the Internal Revenue Code perhaps in more detail than I have on these issues. But does it matter that he didn't pay anything for the lottery proceeds? No, sir. The definition of capital asset in the code has nothing to do with how you acquire the asset. It simply is whether the asset is a form of property not excluded under the statute. Many people receive assets in many different ways. They could pay a lot for a share of stock. They could pay a little. And then the stock rockets up. They could be given the stock inter vivos or testamentary. The difference in — go back to your original question, which is an excellent one. If you want a financial stream asset, a payment owed to you for 20 years, like the taxpayer in Lake, which is the big case the government likes, if that taxpayer or if Mr. McGinnis were simply to sell his annual installment two days before it was due and claim capital gain, and then he did the same thing the second year and the same treatment on every asset, but never disposing of the asset, and he would be thereby benefiting from market appreciation, the total value of the asset, or depreciation. And that's what Professor Chorlestein says in my quotes. The bargain that Congress made in 1921 with taxpayers is, if you sell your entire asset, a sale or exchange, dispose of it, terminate your interest in it, get rid of the investment risk inherent of it, we will give you the special rate, because we're collecting all the money over time. If you horizontally slice an income stream asset period by period by period, but keeping the remainder interest, you are getting the benefit both of capital gain treatment on each seriatim payment, but yet you are not giving up the asset. And that was the flaw in Lake, who had the right to receive income from an oil well for as long as the oil well was spouting oil, but he only sold three years. And the Supreme Court in footnote five said as clearly as can be said, is that that was the vice. Had he sold his entire streams as footnote five, he would have gotten capital gain, and even had he sold a uniform fraction of the entire stream. In other words, one third of every remaining payment is a vertical slice, it's a slice of the tree, that's capital gain. Just as if you have a piece of land and sell it all, it's capital gain, or if you divide it in half and sell it, you get capital gain. You have ten shares of stock and you sell five, you can get capital gain. If you have an income stream asset and you divide it equally in shares, which most lottery winners don't do, you would get under footnote five of Lake, in every later case, capital gain treatment a fortiori when you sell the entire stream, you have sold the entire asset, you've terminated your interest, you've disposed of all the investment risk. But does it matter that the asset wasn't a capital investment? It was a capital investment. According to the Is it matter that the asset wasn't an investment? According to Affiant-Larris, it is as much an investment as an investment in a penny stock or a cheap bond. Well, wait a minute. But if it You're saying it is an investment. That goes to the question of how much did the taxpayer pay for it. If it wasn't an investment, just grant me that hypothetical for a minute. If it wasn't an investment, then does it mean it's not a In 1921, no. The question is, if it's not an investment, can you treat it as a capital asset when you sell it? Yes. The definition of capital asset at Arkansas Best said, the specific ruling of Arkansas Best v. Daigle is that the motive of the taxpayer inquiring the asset is completely irrelevant to its status as a capital asset. The first capital asset statute enacted in 1921 limited capital assets to assets that were purchased for profit and investment, quote, unquote, and excluded any asset that was acquired for personal use of consumption. A lottery right would have fit into that first definition because it is acquired for purposes of profit and investment. In 1924, the statute was broadened to delete the requirement of profit and investment and to include assets that are acquired for personal use and consumption and has stayed the same ever since. You know, counsel, I always like to know what really is on the table. So could you tell me what the difference this makes to your client? What are the implications of winning and losing to your client? What's this all about in dollar terms and tax terms? He has about $305 in tax and $50,000 in penalties at issue. And he's got legal costs that are approaching that. And every other lottery winner who has taken a capital gain position. But what about the big question about dealing with the money itself? How does that play out in terms of what your client's interests are? My client's? In other words, what's your client trying to do? Have this taxed as what? As capital gain. Right. And if he's successful, what does that mean in terms of the dollar difference between that? He would get back about $300,000 that he has paid over. He originally paid it as ordinary. He got it back already, right? He asked for a refund and got it back? He filed a refund recharacterizing it as capital gain in 1998. The IRS agreed with him, gave it back to him. And then just three days before this two-day statute of limitations, the Department of Justice filed this erroneous refund suit. They're entitled to do that. They are entitled to do that. This is about. So what he has at stake is now a refund of $300,000. Which he got. He's still holding. And he'd have to pay back. He's paid the $300,000. So if he wins here, he gets it back again from Federal government. He has to pay it back again after this. Right. Okay. But the really important question affects every single taxpayer. Because if taxpayers cannot tell what is and is not a capital asset. And if their lawyers can't tell. And if Harvard tax professors can't tell. Because the definition of capital asset is what the government wants it to be. Ignore the statutory words. And say that any stream. Any right to a stream of future income payments cannot be a capital asset. That rule is unadministrable. It has no boundaries. It's inconsistent with every case law we've cited. And therefore, it cannot be the rule. Thank you, counsel. We'll hear from the other side. Thank you. Can you please the court? My name is Joel McElvain representing the United States. In ordinary versus capital gain cases, courts face something of a dilemma. Because it's difficult to phrase either a universal positive or a universal negative. If you define property under 1221-2 broadly. Then anything could be capital. Or at least could very easily be converted into capital gain. And ordinary income would just disappear. That's why you have the substitute for ordinary income doctrine. However, the universal negative can go too far also. If you say that anything that could be described as a substitute for ordinary income is ordinary income, then nothing would be capital. Because as taxpayer has stated, virtually any asset can be described in terms of the value of their future income stream. So either way, you could go too broadly and erase the difference between ordinary and capital. So what are the characteristics of what we're talking about that tell us which side that goes on? You have to look to several factors that have been identified in the relevant Supreme Court cases. And the two major ones that are relevant here are, was there any capital investment? Was there any sort of risk undertaken? Was there any transfer of risk when the supposed asset was sold? That's one. And then two, is there any, I'm sorry, the second one is whether there's risk. Is there an earned right to income? Or is there some risk that's being transferred to the purchaser of some uncertainty as to whether this particular asset will produce income in the future? If you're transferring something with no risk, as we have here, we have a guaranteed right to future income, then that is very unlikely to be held to be a capital asset. How do you answer Mr. McGrady's contention that to protect all taxpayers, the government has to have a theory of what's a capital asset that accords with the statute, that it can't, you know, just kind of interpret the statute variously depending on what it thinks of a particular asset? That's why you look to these two factors. I cannot offer you a definition that is going to answer every possible case. People have been looking at this for 80 years, famous tax professors, the Supreme Court, Judge Friendly. Many people who are much smarter than me have been unable to come up with a definition that answers every single possible case. But I don't think this is a case where you're going to get into extraordinary difficulty in deciding the fine lines or the contours of it. This is not, in my view, a close case because two factors which always come up and which weigh heavily in our favor and against taxpayers' favor is there's the absence of any capital investment. We're not talking about a return on investment here. We're just talking about a price. And two, no risk was transferred. We know we're going to get the lottery payments down the road. It's not that there's a, it's not like a share of stock has been transferred and you don't know how the corporation is going to perform in the future. And there's no risk. The government would like us to write a narrow opinion, not coming up with, trying to come up with an all-encompassing rule that just says lottery winnings can't be assigned because they weren't, there was no capital investment to get that income. And there's no risk transferred when you're assigned. I think that's right. They can be assigned, but they can't be treated as anything other than substitute for ordinary income. Yes. Well, yes, you can assign the income, but the proceeds are treated as ordinary. What do you mean no capital investment? Elaborate on that concept. If you have formed a corporation and you have invested money into forming the corporation or you have developed some basis for tax purposes or just, or leave aside tax concepts, just if you have sunk down some money and say you sunk down $100,000 and you're hoping through the performance of the market or any other factors that that $100,000 investment may someday bring you $200,000, before you get that $200,000 potentially down the road, you sell your interest in that enterprise to somebody else, that would be something that is likely to be considered to be capital. You've made an investment. There's some risk associated to what that investment will bring back down the road. Why isn't this a capital investment? Because all they did was buy a lottery ticket. Now, granted, you could say that the $1 under an extreme view could be seen as some kind of an investment, but I would submit that that's really something where a difference in degree really is a difference in kind. A difference in degree is a difference in kind? I'm sorry? Some people spent a dollar to buy a piece of Microsoft and ended up with billions. But that's a dollar that is going into capital investment. That's going into productive use. That dollar is going into the coffers of Microsoft. Right-line lottery, purchase of a lottery ticket simply under no circumstances can be a capital investment. Yes. And, and... Just do it simple as terms. I'm sorry? Okay, you say it. Oh, okay. Well... And for that question, I want to have a follow-on. Okay. There's no dispute here that the lottery prize itself is ordinary income. If you saw the purchase of a lottery ticket as a capital investment, then your proceeds in winning the lottery prize itself would be capital gain. And there's no dispute at all. Even, I don't understand taxpayer dispute that principle. That is ordinary income. I understand. I'm just trying to come up with your test here about no capital investment. Let me see how that works. You said it doesn't. One of the things I just trouble you, in California, in any event, I know the lottery goes to fund schools, a portion of it anyway. So you said the dollar to Microsoft, it goes to productive use. Presumably, the dollar in lottery goes to a productive use. Everywhere. But the dollar that you're buying for Microsoft, that you're spending for Microsoft stock, you're doing it because you want to see how the dollar performs. Microsoft may do well in the market, and that dollar may be worth $1.40 down the road. My aunt gives me a bunch of bonds, and I don't invest anything. And then I sell them. How is the gain treated there? I think something that's received by gift or a testament, I think, I believe, as Judge Fisher said before, somebody made the investment before. So even if you individually, the taxpayer, received that tax-free by gift or by will. Even in a law school-like example, somebody found 50 bonds sitting under a tree, gave them to the police department for two years, nobody claimed them, so you get them? That's still a capital investment. The increase in the value in the bonds. Yeah, I think that that would be capital. In that case, how do they know their basis? I'm sorry? They found them under a tree. How does anybody know what the basis is? Well, their basis probably would be zero. It's like a parking lot. They charge you from the beginning of all time if you lost your ticket. Yes, exactly. And so exactly what does it mean, no risk transferred when assigned? There, if there were some uncertainty, for example, assume that this wasn't a lottery prize, say that he was transferring some right to payment just from some individual down the road and, or from, you know, or say from Microsoft, and maybe Microsoft was not as solid an entity as we know it is today. Well, what if it was the California lottery? Is that a more shaky enterprise? Does that mean there's a risk? Because we don't know if they're going to ever be able to balance that. Well, on this record, we know that there was no risk. The only evidence involving this particular sale was Mr. McGinnis' deposition. He said he assigned no risk discount at all when he's calculating the price. What weight, if any, do we give to the fact that the IRS on first cut on this one actually agreed? The only difference is procedural is that because this is an erroneous refund suit, we bear the burden. I understand that, but in terms of somebody at IRS looked at this and actually decided it was? Sadly, that happens with some frequency. The initial decision on a refund is a, you know, administrative decision. At the government level, administratively, it's stopped from taking a different position. You don't have to answer that. There is provision for erroneous refund suits, and there's no estoppel on that. And do you continue to rely on the judicial estoppel doctrine? Yes, absolutely. If you're having a decision from us saying we're not going to hear your lawsuit, then you're right on the merits of this lawsuit. You know, judicial estoppels is completely discretionary on our part. You want us just to throw the case out and wait for another one. To be perfectly honest, if I had my druthers, I'd rather that you rule on the merits because we have another case coming up in the Ninth Circuit that I'm going to be assigned to, and my brief would be a lot easier that way. But you can rule on the estoppel, too. Whether the elements of judicial estoppel are there or not, doesn't it appear that it would be a good idea for somebody, even the Ninth Circuit, to try to answer this question? To decide it on the merits? Well, again, in my view, I don't consider this to be that difficult a question because of the two factors that I identified. But yes, there are other cases out there. There's the appeal to the Ninth Circuit. There's also an appeal pending in the Seventh Circuit. The other side said this is the most important case in centuries. I would not agree with that characterization. But he's entitled to his view, of course. But you want us to write an opinion that's, if we go your way, that is tied into lottery, the nature of lottery tickets, kind of case by case, not some grand theory of what's a capital asset, which I'm sure my colleagues could articulate. If the Court is aware of some theory that can answer the entire universe of cases, I invite the Court to do so. I am unaware of something that can answer every possible case out there. All I know is that under these narrow circumstances, the two factors I identified weigh heavily against this being a capital asset under the clear language of the Supreme Court substitute ordinary inquiry. Can I ask you one of those before you sit there? There's one point, briefly, if I may. I identified the factors that I have used to sort of draw the dividing line between a broad property definition and a broad substitute for ordinary income doctrine. As I understand taxpayers' contention, the dividing line he wants to draw is the transfer of part versus the transfer of all. And that just simply doesn't work. There's case after case after case where even when everything has been transferred, it's still considered to be ordinary income. In the Supreme Court, Midflint-Ross, everything was transferred. It was ordinary income. Four decisions in the Ninth Circuit, Holt, Hallcraft Homes, Fur and Snow, the entire interest was transferred, but it was ordinary income. There are more cases that are cited in our brief from other circuits, but it just, you simply can't square it with the precedent to say that that's the dividing line, that that is the dividing line. So I'd simply ask that the District Court be affirmed, and I thank the Court. Come ahead. Thank you. I would like to correct what I think are significant legal errors by my opposing counsel and then give you five reasons why you should rule for the taxpayer. He has suggested that the definition of capital asset depends upon whether or not there's capital investment and whether or not there's risk. No statute says that. No statute? What about cases? Excuse me? No statute? What about cases? I'm not aware of any case that says that. Because the Supreme Court has said that not everything which can be called property in the ordinary sense and which is outside of the statutory exclusions qualifies as a capital asset. That was the Gillette case. They said we should construe it narrowly in view of what the purpose of that special treatment is. Yes, sir. That was the Gillette-Motor case, which was a sui generis case in which the taxpayer got compensated for taking up, quote, property under the Fifth Amendment. The taxpayer paid a gain and said, gee, it was property under the Fifth Amendment. It must be true, but the Supreme Court is warning us as to how we ought to approach these terms. I think the Supreme Court's most recent warning in 1988 is that we do not pay attention to that puffy language from Gillette-Motor, Lake, and Corn Products and focus on the words of the statute. So you're telling us that there's no authority whatsoever to use the two prongs of the test that are given to us by the government, no capital investment, no risk transfer? I can't say that there's no sentence and no case that might suggest that. I will say that the evidence in this case does not support it. The uncontradicted testimony of George Larris, Kara Georges, if I affidavit, is that there was a capital investment in this case in two aspects. The investment of a dollar may be small, but the payoff is potentially very unlikely, so it's an investment. Second of all, once the ticket wins, the holding of it, because the market value of a lottery right varies daily in precisely the same manner and for precisely the same factors as a bond, according to the affidavits, the risk of holding it changes day to day. So to say that there is no risk in holding on to a lottery ticket that wins is simply factually incorrect and contrary to all the evidence in this case. Well, could you address footnote 5 of Arkansas? I understand Arkansas Best is your – the case you want us to rely on. What do we do with footnote 5? What I think Arkansas Best did, Your Honors, is two things. I want to deal with footnote 5. Footnote 5 is very specific. Yes, sir. This line of cases, including Kilpatrick and Lake, based on the premise that section 1221 property does not include claims or rights to ordinary income, has no application in the present context. Petitioners hold capital stock, not a claim to ordinary income. Now, if that's the case, what do we do with that? Because this is a claim to ordinary income, correct? It is a claim for what the Supreme Court in that footnote called an accretion or an addition to ordinary income. No, they didn't. They called it a claim to ordinary income. If I may give you what my interpretation of that footnote should be properly, it's that the government was relying on the ordinary income doctrine, and the question was, does the word property in the introductory sentence in section 1221 mean everything in the world that's conceivably property, or are there some things that are not property? And the Supreme Court dropped the footnote and said, yes, there are some things that are not, quote, property for purposes of that introductory sentence. And here they are. They're Hort Lake, which everyone since 1958 has interpreted to apply only to horizontal slices. It's Gillette Motor, which is the case that Judge Trout quoted from, but the facts in that case is that there was no transfer of title to an asset. There was no sale or exchange. That case would be decided today because there was no sale or exchange. And the third case is the Midland Ross case, which only decided that the component of the sales price of an OID instrument that represents accrued, tax-accrued income is ordinary income. But the rest of the sales proceeds in footnote 4 of Midland Ross is said to be capital gain, as do every other case and judicial decision since then. By the way, Midland Ross is now judicial or legislatively overruled, and the tax treatment of a bond or a debt instrument is governed by the Code. So, yes, footnote 5 keeps alive the substitute for ordinary income doctrine, but only for the fact situations of the cases that are cited in the footnote, horizontal slice cases, accrued income cases, Midland Ross, and no title transfer cases, which is the Gillette Motor case that you cited. The last thing your opposing counsel said was that the distinction between all and some is a false distinction, that there are all kinds of cases, and he ran off the names that suggest that that's the case. Your response to that? My response to that is that the only cases — my response to that is that the substitute for ordinary income doctrine is a composite of four fact situations that get lumped together. The biggest category is the horizontal vertical slice distinction. That's Fort Lake. The second category is the no title transfer. That's Gillette Motor. The third category is where the sales component of the sale contains income that was already accrued on the day of the sale. Had the taxpayer not made the sale and filed a tax return on the day of sale, would any of that income be accrued? The Snow case that he had mentioned falls into that category. It was law partnership income that had accrued already on the date that he sold his partnership interest. So it was both an accrued income kind of a case, and it was also a personal service income case, which is the fourth category of fact situation. They're not in footnote 5, but we admit that there's a large volume of lower court cases, including all the rest he mentioned, which were the Holt case in the Ninth Circuit, that suggest when you're trying to sell your question, your right to your capital gain income for the normal money you get for selling your products and services, because that's inconsistent with the nature of the capital assets statute. It is well settled that a right to receive future income which is commuted into a lump sum payment results in ordinary income, just as the income I've actually received in the future in several payments would be ordinary income. The nature of the right to receive future income as ordinary income does not change into capital gain by the mere receipt of a lump sum in lieu of some future payments. Holt. Holt. I seriously suspect that Holt is a case, a 1962 or 64 case, the rationale of which is very confusing. But is that what Holt? Holt came to the right answer. But I would say the right analysis today after Arkansas Best is the reason that Holt doesn't get capital gain treatment is because of the exception under 1221A4 that says if you have something that's functionally an account receivable that you acquired in the normal course of your business for your services rendered or your inventory sold, that is the fourth exception stated under the statute. I think that's the correct way to analyze the Holt facts, because in Holt it is specifically stated three times that the money at issue was for personal services. It is further stated in the body of the Holt opinion that there was not even a sale or exchange involved, and the Court could have decided Holt on the basis of no sale or exchange. And then Holt also dropped a footnote, I think it was 405, that said, gee, we maybe could decide this on the basis of one of the listed exceptions in 1221, the copyright exception, because it had to do with movie profits, and you do not get capital gain treatment under the 1221A3 for a copyrighted work produced by the creator of the work. You understand all the exceptions to 1221 have to do with what Korn Products called not giving capital gain treatment to the profits of an everyday business. Exception one is inventory. You don't get capital gain for selling hammers if you're a hardware store, even if you hold them for a year. Exception two, you don't get capital gain treatment for the depreciable equipment you have in your business. Number three, if you're an artist, musician, writer, you don't get capital gain treatment for selling your painting, your songs, or your work, because that's your business. Now, if somebody else buys it and sells it, they do get capital gain treatment. I thought after you said you were going to give us five reasons. Yes. The reasons are, I'll summarize them and then finish, I may. Number one, you simply have to read the statute, and you will see that a lottery right, as I define it, fits the statute. Number two, if you want to trump the statute, you have to go into the substitute ordinary income doctrine, which exists and continues to exist under footnote 5. But I suggest that those cases are a very narrow limitation on the general word property, and they must be limited to their facts, as I stated them. Horizontal slices, accrued income, no title transfer, or personal service cases. Number three, you can simply rely on the accounts receivable case, line of cases. Every state says a lottery right is an account receivable. Accounts receivable are capital assets under the fourth exclusion, and every case as a non-business account receivable gets capital gain treatment. So if he retained these and not sold them, then they were an account receivable and they should have been? Yes, because he did not acquire the account receivable in return for his personal services. You disagree. Counsel for the government said he thought you were not contesting that the lottery prize was, in fact, a cash ordinary income status. So you're saying that if I take a, if Mr. McGinnis had not sold off, what he would have had was an account receivable with a stream of payments, and those would have been taxable as capital gains? That is absolutely incorrect. He said that. That is absolutely incorrect. No, no, I'm saying that that's what you're saying. If you hold an account receivable and simply collect it, just like if you own a tree and sell the fruit, or a business and collect income, a bond and collect payments, a lottery right and collect the payments, it's always ordinary income. Sell the account receivable. You must sell it under 1222 to get capital gain. That's the bargain. You must sell it or exchange it. You must title transfer it. You must get rid of it. I understand. That's the horizontal slice, vertical slice distinction. Let's move to your next point, please. The next point is that this is a debt instrument under Section 1275 of the Code. Under the Jameson case, which overrules the Hallcraft-Holm case, which counsel said was an example of an entire income stream being sold and getting ordinary income treatment, the rationale of Hallcraft-Holm was specifically overruled by the Ninth Circuit in the Jameson case, which said, no, no, the reason for the ordinary income. That's in your brief, I think. That was in my reply brief. We're way over time. Could you? That disposes of that case. So counsel for the government can cite no case other than those personal service right cases where an entire stream was sold and called ordinary income, and I'm suggesting to you that those cases were decided right but for the wrong reasons. The modern reason should be Arkansas Best. Thank you. We'd like to discuss this with you longer, but we have other cases that we've got here. We thank both counsel for your input. It's an interesting question. The case just argued is ordered submitted, and we'll move to Schwartz v. Prudential Health Care.
judges: Trott, Fisher, Gould